PATRICIA HARTNETT, Plaintiff-Appellee, v. JAMES STACK, Defendant-Appellant (Robert E. Cleveland, Appellant).

Second District   No. 2—92—0208

Opinion filed February 2, 1993.—Rehearing denied February 26, 1993.

Robert E. Cleveland, of Chicago, *pro se*, for appellants.

Manetti & Griffith, Ltd., of Oak Brook, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, James Stack, appeals from a Du Page County circuit court order striking defendant's answer and affirmative defense and entering judgment against defendant and in favor of plaintiff, Patricia Hartnett. Defendant and defendant's attorney, Robert E. Cleveland, also appeal from the circuit court's entry of a judgment against them jointly and severally for plaintiff's attorney fees and costs relating to discovery. The appeal presents us with four issues: (1) whether the trial court erred when it denied defendant's petition for a change of venue; (2) whether the circuit court's presiding judge of the law division erred when he assigned defendant's case for a hearing on defendant's motion for change of venue for cause; (3) whether the circuit court erred when it denied defendant's motion for change of venue for cause; and (4) whether the trial court erred when it imposed sanctions and entered judgments based on the sanctions against defendant and defendant's attorney for discovery violations.

After filing the appeal, defendant's attorney, Robert E. Cleveland, received a copy of a letter from plaintiff dated June 26, 1992. The letter indicated that plaintiff would not file an appeal brief. Based on the letter, on July 13, 1992, attorney Cleveland filed a motion with this court for sanctions and other relief. The court ordered the motion to be taken with the case. We turn first to this preliminary question.

In their motion, defendant and his attorney, Cleveland, charge that plaintiff and her attorneys violated Supreme Court Rule 375 (134 Ill. 2d R. 375) and should therefore be sanctioned. Defendant and attorney Cleveland contend that plaintiff's June 26, 1992, letter indicating that plaintiff would not file a brief shows that plaintiff "and her attorneys have further aided and abetted their game plan to embarrass, harass and wrongfully collect money from appellants herein *** wherein they state that they are not going to file a Breief [*sic*] herein." The motion asserts that plaintiff's filing of an appearance for the appeal without also filing a brief and "their actions in this cause are clearly frivolous and sanctionable." In an attached affidavit, Cleveland, as defendant's attorney and as attorney *pro se*, argues that plaintiff's failure to file a brief in the appeal shows that plaintiff never intended to resist the appeal but filed an appearance only to delay reversal of the trial court judgment. The affidavit concludes that plaintiff's action in not filing an appeal brief warrants sanctions under Rule 375.

Supreme Court Rule 375 provides, in relevant part:

"If, after consideration of an appeal, it is determined that the appeal itself is frivolous, or that an appeal was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting the appeal is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal is to delay, harass, or cause needless expense." 134 Ill. 2d R. 375(b).

■ It is clear from the plain language of Rule 375 that the rule applies to frivolous appeals or appeals deemed to have been taken or prosecuted in bad faith or for an improper purpose. The primary thrust of Rule 375, then, is aimed at appellants who file a frivolous appeal, file an appeal in bad faith, or file an appeal for an improper purpose. (See *Kennedy v. Miller* (1990), 197 Ill. App. 3d 785, 788.) The question before us is whether an appellee's failure to file an appeal brief can constitute a violation of Rule 375 and subject such an appellee to sanctions under Rule 375.

Our supreme court indirectly answered this question when it stated that the only provision in the supreme court rules imposing a sanction for failure to file an appeal brief limits the sanction to prohibiting the nonfiling party from presenting an oral argument. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 130.

Here, defendant charges that plaintiff-appellee's failure to file a brief is sufficient reason to impose sanctions under Rule 375. We disagree. Based on the plain language of the rule and our supreme court's decision limiting sanctions for not filing briefs, we conclude that Rule 375 sanctions are not warranted where an appellee merely does not file a brief. Accordingly, the motion by defendant and attorney Cleveland for sanctions and other relief is denied.

The record on appeal discloses the following. On April 29, 1991, plaintiff brought an action in Du Page County circuit court against defendant to recover the principal and interest accrued on two allegedly overdue promissory notes signed by defendant with plaintiff as payee. Each note was for a period of one year. The first note was dated March 24, 1987, and was in the amount of $15,000 with interest at 10% per annum after that date until paid. The second note was dated April 19, 1989, in the amount of $5,000 with interest at 10% per annum after that date until paid. Plaintiff's complaint claimed the total amount owed by defendant on the notes through May 1, 1991, was $26,393.49. The complaint claimed that defendant owed plaintiff $20,000 total principal plus $6,393.49 total interest on the notes. The complaint also sought $5.48-per-day additional interest after May 1, 1991.

On May 16, 1991, a process server in New York personally served defendant with a summons and a copy of the complaint. The service was performed at the address in Oneida, New York, where defendant was believed to reside.

On June 25, 1991, defendant filed a motion to strike the complaint on the ground that the complaint showed a discrepancy of almost $3,000 in favor of plaintiff between the amount defendant allegedly owed as of February 25, 1991, and as of April 29, 1991. Defendant's motion noted that plaintiff's February 25, 1991, written demand to defendant for payment of the notes calculated that the total amount due as of February 22, 1991, was $23,896.86, nearly $3,000 less than the total amount claimed due in the complaint as of May 1, 1991.

On July 8, 1991, the court held a hearing on plaintiff's motion for default and defendant's motion to strike the complaint. The court agreed with defendant in terms of the discrepancy and ordered plain-

tiff's complaint amended to reflect the amount shown in the written demand for a total of $23,896.86, plus $5.48 per day in interest after February 22, 1991. The court also ordered defendant to answer or otherwise respond to the amended complaint on or before July 29, 1991, and set a status date of October 7, 1991.

On August 2, 1991, defendant filed a motion to extend time to respond. The motion indicated that defendant's attorney attempted to contact defendant to prepare a response, but that defendant's wife had informed defendant's attorney that on the advice of defendant's doctor defendant could not talk on the phone because defendant was terminally ill. The motion also indicated that defendant's attorney would be unavailable from August 4, 1991, through August 22, 1991, because he would be out of town.

On August 13, 1991, plaintiff filed a motion for default. The motion for default alleged that defendant failed to answer or otherwise respond to the complaint within the time permitted by law. On the same date, plaintiff filed a request for production of documents. The request asked for production by defendant of all documents relating to the promissory notes, copies of checks or other records of any payments by or for defendant on the notes, and relevant correspondence between plaintiff and defendant.

On September 3, 1991, the court entered an order continuing plaintiff's motion for default. The order also required defendant to file responsive pleadings by September 17, 1991, and let the previously set status date of October 7, 1991, stand.

On September 27, 1991, defendant filed a purported answer to plaintiff's complaint. The answer noted that defendant "is terminally ill, as evidenced by the attached letter from Dr. Robert W. Burdick," and that the answer was therefore based on the belief and information of defendant's attorney. The answer denied that defendant failed to make payments required by the notes and denied the paragraph in the complaint showing the amount in question. Attached to defendant's answer was a document labeled "affirmative defense" which claimed that defendant had quadruple bypass surgery and a lung removed in December 1989; that just before the surgery defendant sold the business to two named persons who agreed to assume all of defendant's liabilities, including the notes; that those persons now had defendant's business records including all documents relating to the notes; and that defendant recalls having made a substantial, perhaps complete, payment on the notes, but cannot recollect dates or amounts paid. Based on this affirmative defense, defendant sought dismissal of the complaint. Also attached to defendant's answer was a

letter dated July 10, 1991, signed by Robert W. Burdick, M.D., and stating "My patient, James Stack, has terminal endstage heart and lung disease. He is unable to travel anywhere by any means of transportation and should be excused from any court ordered requirements. Mr. Stack is presently under the care of a Hospice."

On October 2, 1991, plaintiff filed another motion for default. The motion alleged that defendant had failed to answer or otherwise respond to the complaint within the time permitted by law. In reviewing the chronology of the suit, plaintiff's motion did not mention defendant's answer and affirmative defense filed September 27, 1991.

On October 7, 1991, the court, noting plaintiff's motion for default, entered an order granting defendant leave to file an answer *instanter*. The order also granted plaintiff leave to file a motion attacking defendant's answer on or before October 21, 1991, granted defendant leave to answer the motion on or before November 4, 1991, and set a status hearing date of November 13, 1991.

On October 22, 1991, after a hearing on plaintiff's motion to expedite discovery, the court ordered defendant to file on or before October 29, 1991, a physician's affidavit as to defendant's health and ability to participate in a deposition. The court set the next hearing date for October 27, 1991, for a hearing on plaintiff's motion to expedite discovery. The court "further ORDERED that failure to file a physician's affidavit may subject defendant's counsel, Mr. Cleveland, to sanction."

On October 28, 1991, defendant's attorney, Robert E. Cleveland, filed an affidavit in which he recounted essentially the same things previously presented in the answer and affirmative defense. For example, the affidavit stated that defendant had bypass surgery and a lung removed, that defendant was terminally ill, and that defendant sold his business. Attorney Cleveland again attached a copy of the July 10, 1991, letter, signed by Dr. Burdick (still not notarized) and two other letters supporting defendant's assertion that he sold his business. On the same date, attorney Cleveland filed a petition for change of venue alleging that the trial judge was prejudiced against defendant and that attorney Cleveland had become aware of this on October 22, 1991.

On October 29, 1991, after hearings on plaintiff's motion to expedite discovery and defendant's petition for change of venue, the trial court entered an order which denied defendant's petition for a change of venue. The court also ordered defendant to answer plaintiff's interrogatories and comply with plaintiff's request for documents on or before November 15, 1991. In addition, the court ordered defendant to

submit to a discovery and evidence deposition "in the city or town of his residence" on November 19, 1991.

On November 14, 1991, plaintiff filed a motion for participation of foreign attorney. The court entered an order permitting two named persons, Mark Grobosky and Eric Alderman, to participate in this cause for the purpose of taking depositions in the State of New York and assisting in other discovery related matters.

On November 21, 1991, plaintiff filed affidavits signed by Mark Grobosky and Eric Alderman verifying that they were licensed New York attorneys available to take defendant's discovery and evidence deposition on November 19, 1991. On the same date, plaintiff also filed a notice of deposition indicating plaintiff intended to depose the defendant on November 19, 1991, in New York. The notice contained a certification that a copy was sent to defendant's attorney on November 15, 1991. On November 21, 1991, plaintiff also filed an entry of appearance as additional counsel for Mark Grobosky and Eric Alderman.

On November 27, 1991, plaintiff filed a request for production of documents and interrogatories. The attached certificate of service indicates that the request for production of documents and interrogatories were mailed October 16, 1991.

On December 12, 1991, plaintiff filed a motion for sanctions. The motion alleged that defendant failed to comply with requests for production and failed to answer the interrogatories as ordered by the court on October 29, 1991. The motion also alleged: that on November 7, 1991, plaintiff's counsel sent defendant's attorney, Robert E. Cleveland, a reminder that the court had set defendant's deposition for November 19, 1991, and asked defendant's attorney to contact plaintiff's attorney prior to November 15, 1991, to make arrangements for the exact time and place of the depositions; that attorney Cleveland did not respond to the November 7 letter; that on November 15, 1991, plaintiff's attorney sent attorney Cleveland notice of the deposition; that on November 18, 1991, plaintiff's attorney left two messages on attorney Cleveland's office telephone answering machine confirming the deposition would proceed on November 19, 1991; that on November 19, 1991, before regular business hours, attorney Cleveland, apparently responding to the message left on his answering machine, left a message on plaintiff's attorney's telephone answering machine stating, "I don't know what you're talking about," and adding that he would not be in his office in the early morning that day; that plaintiff's attorney received attorney Cleveland's message shortly after 9 a.m., C.S.T., which is after 10 a.m., E.S.T., when plaintiff's attorneys

were already at the location for the deposition with the court reporter; that defendant failed to appear for the deposition; that on December 6, 1991, plaintiff's attorney sent to defendant's attorney a letter indicating that defendant failed to appear for the deposition and that defendant's attorney should immediately contact plaintiff's attorney to reschedule the deposition; that defendant's attorney did not respond to the December 6 letter; and that plaintiff incurred significant expenses in court costs and attorney fees related to the failed deposition. The motion sought reimbursement for costs and fees in the total amount of $2,949, and entry of judgment on plaintiff's complaint.

On December 12, 1991, plaintiff also filed a motion to strike defendant's answer and affirmative defense for "insufficiency at law." The motion sought a default judgment against defendant for failure to answer and the entry of judgment in favor of plaintiff on the basis of her verified complaint.

On December 18, 1991, the court entered an order granting defendant leave to file and serve his responses to plaintiff's motions by December 31, 1991. The order also granted plaintiff leave to file replies on or before January 14, 1992, and set a hearing date for January 22, 1992.

On January 13, 1992, defendant filed a motion for change of venue for cause. The motion alleged that the trial court's entry of its order of December 18, 1991, entertaining plaintiff's motion for sanctions when the trial judge was aware of defendant's terminally ill condition, indicated a "sadistic prejudice" on the part of the judge toward defendant.

On January 13, 1992, plaintiff filed a reply in support of its motion to strike answer and a reply in support of its motion for sanctions.

On January 22, 1992, upon reading defendant's motion for change of venue for cause, the trial judge transferred the case to the presiding judge of the circuit court's law division, Judge Black, for reassignment. Judge Black reassigned the case to another judge in the same circuit, Judge Jorgensen, who held a lengthy hearing on defendant's motion for change of venue for cause and then denied defendant's motion. The case was transferred back to Judge Black, who reassigned it back to the original trial judge, Judge Byrne. Judge Byrne then granted plaintiff's motion for sanctions, granted plaintiff's motions to strike defendant's answer, entered an order striking defendant's answer and affirmative defense, entered judgment in favor of plaintiff and against defendant in the amount of $27,851.17 ($26,393.49 plus $1,457.68 in interest at $5.48 per day from May 1, 1991, through Jan-

uary 22, 1992), plus costs, and entered judgment in favor of plaintiff and against defendant and attorney Cleveland, jointly and severally, in the amount of $2,949 "as and for the plaintiff's reasonable attorney's fees and costs relating to discovery." Defendant and defendant's attorney made a timely appeal from the orders and judgments entered by the circuit court on January 22, 1992.

Since plaintiff has not supplied us with a brief, we will decide the merits of the appeal pursuant to the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

The first issue on appeal is whether the trial court erred when it denied defendant's motion for a change of venue. Defendant contends that he had an absolute right to a change of venue because his petition for a change of venue was based on the alleged prejudice of the judge and his petition was timely filed. Defendant asserts that his petition was timely filed because the trial court made no substantive rulings before the petition was filed.

The Illinois Code of Civil Procedure provides that the right of a civil litigant to a change of venue is absolute where a petition alleging judicial prejudice is filed before trial or hearing and before the trial judge has made any substantive ruling in the case. (Ill. Rev. Stat. 1991, ch. 110, pars. 2—1001(a)(2), (c); *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 530.) If timely made, the right to a change of venue is mandatory so that a trial judge has no discretion to deny a timely and proper petition for a change of venue. *In re Dominique F.* (1991), 145 Ill. 2d 311, 319.

However, to be timely, a petition for a change of venue must be offered at the earliest practical moment, and a petition is too late if it is presented after the trial judge has ruled on a substantive issue in the case. (*City of Chicago in Trust for the Use of Schools v. Hamlin* (1962), 24 Ill. 2d 148, 150.) A petition for a change of venue "must be brought at the earliest practical moment in order to prohibit a litigant from seeking a change of venue only after he has formed an opinion that the judge may be unfavorably disposed toward his or her cause." *Paschen Contractors, Inc. v. Illinois State Toll Highway Authority* (1992), 225 Ill. App. 3d 930, 936.

Here, defendant presented his motion for a change of venue after the trial court ruled on defendant's motion to strike plaintiff's complaint, ordered plaintiff to amend her complaint, and ordered defendant to answer or otherwise respond to the complaint. In addition, before defendant filed his motion plaintiff filed a motion for default, the court continued plaintiff's motion for default after defend-

ant filed a motion to extend time to respond, defendant filed a purported answer and affirmative defense seeking dismissal of the complaint, plaintiff filed another motion for default on the ground that defendant had failed to answer or otherwise respond by the date set by the court, and the trial court ordered defendant to file a physician's affidavit in support of defendant's purported affirmative defense and notified defendant that failure to file the affidavit could subject defendant's attorney to sanctions. The question before us is whether these actions by the trial court were substantive rulings.

Our supreme court has concluded that a trial court's action on a defendant's motion to strike and a trial court order for a defendant to answer a complaint were substantive rulings and the defendant's petition for a change of venue after those rulings was properly denied as untimely. (*Swanson v. Randall* (1964), 30 Ill. 2d 194, 198.) We follow the supreme court and find that the trial court's actions in this case to partially grant defendant's motion to strike plaintiff's complaint and the trial court's order requiring defendant to answer the complaint were substantive rulings. It is therefore unnecessary for us to consider whether the other trial court actions were substantive rulings. Accordingly, we conclude that defendant's motion for a change of venue was not timely and that the trial court properly denied defendant's motion for a change of venue.

The next issue on appeal is whether the chief judge of the law division, Judge Black, erred when he reassigned the case for a hearing on defendant's motion for change of venue for cause. Judge Black assigned the case to an associate judge within the same circuit, Judge Jorgensen.

In his brief, defendant maintains that Judge Black's reassignment of the case to an associate judge "whose reappointment to continue in that position would be subject to the power and discretion of judges Black and Byrne, who were full Circuit Judges," created a situation of conflict for Judge Jorgensen. Defendant further asserts that "[w]hether or not Judge Jorgenson [*sic*] received instructions or suggestions as to how to rule on this matter, while incapable of positive determination, is quite certainly suspect under the circumstances, especially in view of neither counsel apparently having an opportunity to object to Judge Black concerning such assignement [*sic*] and the relative status of the Judges involved." Defendant adds that "in view of what subsequently occurred herein, it is quite likely that Judge Jorgenson [*sic*] received and followed her 'marching orders.'" Defendant ends his argument on this issue by concluding that "the unfairness to the defendant created by this assignment to Judge

Jorgenson [*sic*] is patently prejudicial to the defendant and cries for the reversal of tha [*sic*] order and a remanding of this whole matter to a proper, unprejudiced Tribunal."

█ This argument must be rejected. By its own admission, it is based on mere conjecture. The suggestion, without proof, that a judge would disregard the duties and obligations of her office in order to please others who might have a say in her retention is patently untenable. See *American International Hospital v. Chicago Tribune Co.* (1983), 120 Ill. App. 3d 435, 440.

The next issue is whether the circuit court erred when it denied defendant's motion for change of venue for cause. After a court has made substantive rulings, such as in this case, the court may grant a petition for change of venue grounded in judicial prejudice only if the petitioner demonstrates good reason to fear prejudice by the court. (*Harvey v. Brewer* (1987), 166 Ill. App. 3d 253, 259.) The petitioner must set forth specific allegations to support the alleged prejudice, and the petition will be granted only in the sound discretion of the court. (*Meyer v. Continental Illinois National Bank & Trust Co.* (1990), 200 Ill. App. 3d 601, 604.) A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests with the petitioner, who must show actual prejudice in the form of personal bias stemming from an extrajudicial source and prejudicial trial conduct. (*In re Marriage of Hartian* (1991), 222 Ill. App. 3d 566, 569.) An appellate court will not disturb a grant or denial of a petition for change of venue absent an abuse of discretion. *Gouker v. Winnebago County Board of Supervisors* (1967), 37 Ill. 2d 473, 475.

At the hearing on defendant's motion for change of venue for cause, defendant's attorney, Robert E. Cleveland, made it clear that defendant's argument centered on defendant's alleged terminal illness. Attorney Cleveland first stated that "[p]art of the thrust of our motion is the fact that in this particular case, the Defendant is terminally ill and has been for some time." Attorney Cleveland next referred to the July 10, 1991, letter signed by Dr. Burdick and read the contents of the letter into evidence. Attorney Cleveland then attempted to introduce documents into evidence which he stated he had obtained from the Hospice of Du Page "so the court will understand, if it doesn't already, what hospice care is." The court did not allow the documents into evidence primarily on the grounds of relevance and foundation. Attorney Cleveland then referred to a second letter purportedly signed by Dr. Burdick.

Attorney Cleveland next requested that he and plaintiff's attorney both be sworn to testify. The judge allowed this for the limited pur-

pose of the hearing—to determine whether the trial judge was prejudiced against defendant.

During his direct examination of plaintiff's attorney, defendant attempted to elicit testimony as to whether one of the principals in plaintiff's attorney's law firm had made a recent contribution of money to Judge Byrne. Judge Jorgensen did not allow this testimony, finding it "well beyond the four corners of [the] motion," not raised in the pleadings, and therefore not properly before the court.

Attorney Cleveland then made an offer of proof. The offer of proof stated that if plaintiff's attorney were allowed to testify further on this question, he would testify that Judge Byrne attended a fundraising event in October 1991 where plaintiff's attorney's law firm was a substantial contributor of funds for Judge Byrne's reelection. The offer of proof continued by claiming that a principal of plaintiff's attorney's law firm was seen talking to Judge Byrne at the fund-raising event, that remarks were overheard showing that Judge Byrne was favorably inclined toward the principal, and that this favorable inclination was apparent when remarks made by Judge Byrne at a hearing in this case showed that Judge Byrne had prejudged the matter against defendant and defendant's attorney and in favor of plaintiff. Plaintiff objected to the offer of proof on the ground that his testimony would not be what defendant's attorney portrayed it to be. Noting that the offer of proof contained at least double hearsay, Judge Jorgensen allowed it to stand.

Attorney Cleveland then resumed his examination of plaintiff's attorney. The questioning attempted to determine whether one of the New York attorneys who was supposed to take defendant's deposition had filed an appearance. The court found this line of questioning not related to the alleged prejudice of Judge Byrne.

Attorney Robert E. Cleveland then called himself as a witness for the defense. His testimony essentially recounted defendant's previous arguments. For example, attorney Cleveland again stated that he had given the trial court two letters signed by Dr. Burdick which indicated that defendant was terminally ill, was in a hospice, should not be subject to depositions, and could not communicate.

Attorney Cleveland also testified that the trial court's very entertainment of plaintiff's motions to compel discovery and for sanctions for defendant's failure to appear for a deposition when Judge Byrne knew defendant's condition "showed that Judge Byrne was prejudiced in a very sadistic manner." Attorney Cleveland further testified that Judge Byrne's response to his representation of defendant's illness was "file your answer to the motion." Attorney Cleveland concluded

that Judge Byrne's response "indicates a predisposition to judge this case because of prejudice against terminally ill patients."

Attorney Cleveland then testified that Judge Byrne had made a remark in court that showed he had prejudged the matter against defendant. Attorney Cleveland testified that Judge Byrne made the remark when Judge Byrne ruled on plaintiff's motion to compel discovery. Attorney Cleveland stated that the remark was "there will be a sanctions hearing against the Defendant in my opinion." Attorney Cleveland charged that the remark showed that the judge was either personally prejudiced or had been prejudiced by others. Plaintiff's attorney disputed the characterization of the judge's remark.

During the hearing on defendant's motion for change of venue for cause, Judge Jorgensen summarized her findings. The findings included: that defendant failed to comply with the October 22, 1991, order requiring verification of defendant's condition and therefore defendant's contention that he was terminally ill was supported only by two unverified letters; that there is conflicting testimony about the content of the allegedly prejudicial remark by Judge Byrne; that Judge Byrne granted a number of continuances to defendant before requiring an affidavit on defendant's letters; and that the rulings made by Judge Byrne are insufficient to show that Judge Byrne was prejudiced against defendant.

On appeal, defendant essentially again contends that defendant was in a hospice and therefore must have been terminally ill and unable to comply with plaintiff's discovery requests. Defendant reiterates his argument that Judge Bryne's entertainment of a motion to compel compliance with discovery in such circumstances "clearly demonstrates a prejudicial, if not actually sick, attitude and state of mind."

■ We find that defendant has not shown that Judge Byrne was prejudiced against him and that Judge Jorgensen did not err in denying defendant's motion for a change of venue for cause. Defendant did not establish specific allegations supporting the alleged prejudice. Attorney Cleveland's offer of proof with respect to alleged contributions to Judge Byrne was beyond the scope of the motion and was unsubstantiated. The disputed remark allegedly made by Judge Byrne, even if accurate, does not necessarily show he was prejudiced against defendant. Defendant's arguments relying on Judge Byrne's alleged failure to take defendant's condition into account are conclusory at best. The record shows that attorney Cleveland was ordered to provide verification of defendant's health condition which defendant had raised as an issue, but that attorney Cleveland simply did not provide

the required verification. For all these reasons, defendant has failed to overcome the presumption that the trial judge is impartial. Accordingly, we will not disturb Judge Jorgensen's denial of defendant's motion for change of venue for cause.

The next issue on appeal is whether the trial court erred in imposing sanctions on defendant and his attorney, Cleveland, for discovery rule violations. The trial court imposed two distinct sanctions. First, the court imposed monetary sanctions on defendant and attorney Cleveland for plaintiff's costs and attorney fees. Second, the court imposed sanctions against defendant by striking defendant's answer and affirmative defense and entering a default judgment against defendant on the basis of plaintiff's complaint. We will first consider whether any sanctions for noncompliance with discovery rules were warranted. We will then determine whether each of the particular sanctions was proper in this case.

Under supreme court rules, a trial court has extensive authority to supervise discovery and to impose sanctions for discovery rule violations. Supreme Court Rule 219(c) provides:

"If a party *** unreasonably refuses to comply with any provision of part E of article II of the rules of this court *** or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

* * *

(v) that, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that his action be dismissed with or without prejudice; or

(vi) that any portion of his pleadings relating to that issue be stricken and, if thereby made appropriate, judgment be entered as to that issue.

In lieu of or in addition to the foregoing, the court may order that the offending party or his attorney pay the reasonable expenses, including attorney's fees incurred by any party as a result of the misconduct ***." 134 Ill. 2d R. 219(c).

Under Rule 219(c), the imposition of sanctions is largely a matter within the discretion of the trial court and will not be disturbed on review unless the sanctions constitute an abuse of discretion such as where the sanctioned party's conduct was not unreasonable or where the sanction itself is not just. (*Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191, 196.) The purpose of discovery violation sanctions is to

effect discovery and not to inflict punishment. (*Kubian*, 178 Ill. App. 3d at 196.) Once the trial court has imposed the sanction for noncompliance with a discovery rule or order, the sanctioned party has the burden of establishing that the noncompliance was reasonable or justified by extenuating circumstances or events. *Kubian*, 178 Ill. App. 3d at 197.

To determine whether noncompliance with discovery rules or orders was unreasonable, the trial court should consider whether the offending party's conduct was characterized by a deliberate and pronounced disregard for the discovery rules or order. (*Beiermann v. Edwards* (1990), 193 Ill. App. 3d 968, 974.) A court may also consider the importance of the information a party is seeking to have produced. (*American Family Insurance Co. v. Village Pontiac-G M C, Inc.* (1992), 223 Ill. App. 3d 624, 627.) To determine whether a sanction order was just, a court must look to the conduct that gave rise to the sanction order and to the effect of that conduct on the parties. *Beiermann*, 193 Ill. App. 3d at 975.

Here, defendant failed to comply with court-ordered discovery in three ways. First, the trial court ordered defendant to file a physician's affidavit regarding defendant's health and ability to participate in a deposition. Defendant did not file such an affidavit. Second, after defendant failed to file the physician's affidavit and plaintiff filed a motion to expedite discovery, the trial court ordered defendant to answer plaintiff's interrogatories and comply with plaintiff's request for documents. Defendant did not answer the interrogatories or supply the requested documents. Finally, on October 29, 1991, the trial court ordered defendant to submit to a deposition on November 19, 1991. Defendant failed to appear for the deposition and defendant's attorney, Robert E. Cleveland, did not respond to plaintiff's efforts to reschedule the deposition.

Defendant did not offer any explanation for these failures to comply with the court's discovery orders. Instead, defendant essentially chose to argue that the very entry of the orders showed that the trial judge was prejudiced against him.

On appeal, defendant argues that plaintiff's motion for sanctions was flawed because plaintiff did not make a reasonable attempt to resolve differences about discovery pursuant to Supreme Court Rule 201(k) (134 Ill. 2d R. 201(k)). Defendant also maintains that his failure to appear for his deposition was the result of plaintiff's failure to provide reasonable notice of the deposition pursuant to Supreme Court Rule 206(a) (134 Ill. 2d R. 206(a)). Finally, defendant continues to assert on appeal that the trial judge was prejudiced against defendant

and his attorney, Cleveland, and that this alleged prejudice "was never more apparent" than in the judge's "abuses of discretion" in ordering sanctions.

■■ We find defendant's arguments unpersuasive. Supreme Court Rule 201(k) requires that "[e]very motion with respect to discovery shall incorporate a statement that after personal consultation and reasonable attempts to resolve differences the parties have been unable to reach an accord." (134 Ill. 2d R. 201(k).) However, technical compliance with Rule 201(k) is not required where the record reflects that the parties were unable to reach an accord after reasonable attempts to resolve differences. (*Lavaja v. Carter* (1987), 153 Ill. App. 3d 317, 325.) Here, attorney Cleveland showed an adamant refusal to budge from his position that the unverified doctor's letters were sufficient to establish defendant's terminal illness; defendant simply did not respond to plaintiff's interrogatories and request for documents; and defendant showed an unwillingness to cooperate in scheduling defendant's deposition. In the face of such a demonstrated attitude of noncooperation, technical compliance with Rule 201(k) was not required in this case.

Defendant's Rule 206(a) arguments are also unpersuasive. Supreme Court Rule 206(a) requires that "[a] party desiring to take the deposition of any person upon oral examination shall serve notice in writing a reasonable time in advance on the other parties." (134 Ill. 2d R. 206(a).) Defendant argues that plaintiff's November 15, 1991, mailing of a written notice to depose defendant on November 19, 1991, did not comply with Rule 206(a) because it was not received by attorney Cleveland until the day of the scheduled deposition. However, defendant was previously notified of the deposition by the October 29, 1991, court order directing that defendant's deposition occur in the city or town of his residence on November 19, 1991. The record indicates that plaintiff's attorney had previously attempted to arrange with attorney Cleveland the specific time and place of the deposition, but that attorney Cleveland failed to respond. After defendant failed to appear for the court-ordered deposition, plaintiff's attorney attempted to contact attorney Cleveland to reschedule the deposition, but attorney Cleveland again did not respond. Accordingly, we find that plaintiff substantially complied with Rule 206(a).

As seen above, defendant's arguments attempting to show that the trial judge was prejudiced against him and his attorney failed to establish prejudice. Defendant's argument that the trial judge's order of sanctions for discovery violations shows the judge was prejudiced against defendant also fails.

Based on the foregoing, we conclude that the trial court did not err when it ordered sanctions against defendant for defendant's violations of the trial court's discovery orders. We will next consider whether the specific sanctions were proper.

The first sanction to be considered is the monetary sanction imposed on defendant and attorney Cleveland. The trial court ordered sanctions in the amount of $2,949 against defendant and attorney Cleveland, jointly and severally, for plaintiff's costs and attorney fees related to discovery. Plaintiff's itemized list of fees and costs attached to her motion for sanctions indicates that most of the fees and costs were related to defendant's deposition. Rule 219(c) clearly requires that a sanction of expenses, including attorney fees, must be related to and be the result of the specific conduct involved in the discovery violation. *Dyduch v. Crystal Green Corp.* (1991), 221 Ill. App. 3d 474, 480.

Here, plaintiff's expenses and fees were the result of defendant's misconduct in not complying with the discovery orders. If defendant had provided the physician's affidavit regarding defendant's health, then plaintiff quite likely would not have incurred these expenses. If defendant had verified that he was unable to be deposed, then plaintiff would not have made the costly arrangements with out-of-State attorneys to take defendant's deposition. Because the expenses incurred by plaintiff were the result of defendant's misconduct, the trial court did not err when it sanctioned defendant and attorney Cleveland by ordering them to pay plaintiff's expenses and attorney fees.

The next sanction we consider is whether the trial court erred when it struck defendant's answer and affirmative defense and entered judgment in favor of plaintiff for the amount shown in plaintiff's complaint. After granting plaintiff's motion to strike defendant's answer and plaintiff's motion for sanctions, the trial court struck defendant's answer and affirmative defense and ordered judgment entered in the amount of $26,393.49, plus interest, for a total judgment of $27,851.17 plus costs.

Although defendant has not, *per se*, contested the imposition of a sanction in the form of striking his answer and entering judgment, we will address the matter. A sanction causing a default judgment, such as striking defendant's answer, is the most severe Rule 219(c) sanction a court can impose on a defendant and is only proper in cases where the sanctioned party's conduct showed deliberate, contumacious, or unwarranted disregard of a court's authority. (*Lavaja*, 153 Ill. App. 3d at 323.) Courts should impose default orders only as a

last resort where all other enforcement powers at the court's disposal have failed to advance the litigation. (*Martinez v. Pfizer Laboratories Division* (1991), 216 Ill. App. 3d 360, 373-74.) However, before a default judgment will be set aside, the sanctioned party has the burden of establishing that his failure to comply with discovery orders was justified by extenuating circumstances and must show a willingness to comply with discovery orders in the future. *Harris v. Harris* (1990), 196 Ill. App. 3d 815, 823.

Here, defendant's conduct was deliberate, contumacious, and an unwarranted disregard of the court's authority. Defendant raised the issue of his health, made the health claim the linchpin of his defense and his noncompliance with discovery orders, and then in the face of a direct order by the court to verify his health status did not provide a physician's affidavit which could prove his health claim. Defendant did not show any extenuating circumstance which could justify his failure to verify his health status. Nor did defendant show a willingness to comply with future discovery orders. On appeal, defendant's attorney continues to assert that the unverified doctor's letters should have been sufficient to establish defendant's health condition and has continued to defy the court's authority to order that defendant's health condition be verified. In view of such recalcitrance, the court had no other effective powers to advance the litigation than to enter a default judgment. For these reasons, we conclude that the trial court did not err when it struck defendant's answer and affirmative defense and entered judgment in favor of plaintiff.

The final matter before us is whether the trial court erred in the amount of the judgment it entered against defendant. Defendant contends that the court improperly entered judgment for an amount shown to be in error when plaintiff's complaint was amended.

The trial court order of January 22, 1991, clearly shows that judgment was entered for the amount of the unamended figure. The order entered judgment for $26,393.49, the amount shown to be due in the original complaint as of May 1, 1991, plus $5.48 per day thereafter. The total amount of the judgment was for $27,851.17 ($26,393.49 plus 266 days from May 1, 1991, through January 21, 1992, at $5.48 per day). The question is whether the trial court properly used the $26,393.49 figure it had previously ruled was in error.

The trial court apparently reasoned that, since defendant's answer was stricken and the complaint had been amended on the basis of the now-stricken answer, the original complaint amount should be used. We believe that this was improper because it would have the

effect of punishing defendant for his discovery violations and is therefore contrary to the purpose of Rule 219(c) sanctions.

The record shows that the correct amount due on the promissory notes as of February 22, 1991, was $23,896.86 plus $5.48 per day interest thereafter. There are 334 days from February 22, 1991, until January 21, 1992. Three hundred thirty-four days at $5.48 interest per day equals $1,830.32, thus the total amount defendant owes on the notes through the date of judgment should be $25,725.18 ($23,896.86 through February 22, 1991, plus $1,830.32 interest thereafter through January 21, 1992). Pursuant to our power under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we order that the judgment entered by the trial court in favor of plaintiff be changed from $27,851.17 to $25,725.18.

Based on the foregoing, the judgments of the circuit court of Du Page County are affirmed, with the judgment against defendant in the reduced amount shown above.

Affirmed as modified.

GEIGER and DOYLE, JJ., concur.