740 N.E.2d 41 (2000)
317 Ill. App.3d 607
251 Ill.Dec. 211
In re B.C., D.C., D.C., E.C., D.K., D.K., and D.K., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Bernadine C., Respondent-Appellant).
No. 1-99-0616.
Appellate Court of Illinois, First District, Second Division.
November 21, 2000.
Nunc Pro Tunc September 26, 2000.
*42 Cook County Public Defender Rita A. Fry (Assistant Public Defender Suzanne A. Isaacson, of counsel), Chicago, for Appellant.
Cook County State's Attorney Richard A. Devine (Assistant State's Attorneys Renee Goldfarb, Jennifer Streeter and Pavlina Kochankovska, of counsel), Chicago, for Appellee (State of Illinois).
*43 Patrick T. Murphy, Lee Ann Lowder, Elizabeth A. Sunderland, Office of the Cook County Public Guardian, as attorney and guardian ad litem for the minors, Chicago, for Appellees (Minors).
Justice McBRIDE delivered the opinion of the court:
Following a hearing, the trial court found that respondent Bernadine C. was an unfit parent, and that it was in the best interest of her seven minor children, Barna C., DeAngelo C., Detrice C., Eric C., Demetrius K., Desmetric K., and Dominitric K., to terminate her parental rights. On appeal, respondent contends that the trial court deprived her of due process when it sanctioned her for failing to appear at her termination of parental rights hearing by finding her in default and prohibiting her attorney from presenting evidence on her behalf. Respondent also contends that because she had been visiting her children for over a year at the time of the hearing, it was not in their best interest to terminate her parental rights.
Respondent's seven children, who were all born between 1985 and 1995, were taken into protective custody as a result of her ongoing substance abuse problems, her frequent abandonment of them, and her inability to exhibit appropriate parenting skills or judgment. After separate adjudication hearings, a finding of dependency was entered as to Eric C. in 1996, and findings of neglect were entered as to Barna C., DeAngelo C., Detrice C., Desmetric K., Demetrius K., and Dominitric K. in 1990 and 1992. Between 1993 and 1997, the State initiated termination of parental rights proceedings for each child due to respondent's failure to follow the case plans created by the Illinois Department of Children and Family Services (DCFS) and by the children's caseworkers.
Respondent failed to appear at the termination hearing, though the State filed a Supreme Court Rule 237(b) notice compelling her appearance. 166 Ill.2d R. 237(b). Her attorney told the court that he had attempted to locate her, but was not able to do so. As a result, the trial court granted the State's motion to enter sanctions against respondent pursuant to Supreme Court Rule 219. 166 Ill.2d R. 219. The trial court entered an order striking respondent's answer, finding her in default, and finding that while respondent's attorney would be able to cross-examine witnesses and give a closing argument, her attorney would not be allowed to offer witnesses on her behalf.
Rhonda Crawford testified that she worked for DCFS and was assigned to Eric and DeAngelo's cases in June 1996, and to Desmetric and Dominitric's cases in November 1997. Crawford reviewed the case files as they were assigned to her and found that DCFS became involved with the children in 1989, when respondent abandoned the three oldest children. DCFS also became involved when Barna was born testing positive for narcotics. Crawford testified that respondent was offered parenting classes, drug rehabilitation treatment, psychological evaluation, visitation with her children, and was asked to comply with random drug tests. However, respondent failed to satisfactorily complete the services offered to her, and did not complete a drug treatment program until 1997. In 1997, respondent successfully completed an inpatient drug rehabilitation program and in 1998 she completed an outpatient program. Though Crawford testified that respondent consistently visited the children in the year preceding the hearing, she said that respondent did not visit the children on a regular basis until 1998. Respondent had a history of being in and out of jail. Crawford testified that respondent failed to contact DCFS when she was in jail and did not give caseworkers her address when she was released.
Monica Lowe, a caseworker with Aunt Martha's Youth Services Center, testified that she was assigned to Barna C.'s case. Though respondent visited Barna regularly in the year leading up to the hearing, *44 she had not maintained consistent visitation prior to that time.
Ardyth Gist, a Catholic Charities employee, testified that she was the caseworker assigned to Demetrius K. She stated that though respondent had begun visiting Demetrius just before she was assigned to the case in 1998, respondent's visitation prior to that time was never consistent.
Eric Dickerson, a caseworker with the Chicago Association for Retarded Citizens, testified that he was assigned to Detrice K.'s case from November 1993 through November 1995. During that time period, respondent never visited or attempted to contact Detrice. Nor did she participate in any of the services being offered to her through Dickerson's program.
After hearing this testimony, the trial court found respondent unfit, stating, "[t]hese are extremely old cases, 10 years. I think that's plenty of time for anybody to make some amount of progress." The court then proceeded with the best interest hearing.
Rhonda Crawford testified that Eric was living with a foster family who wished to adopt him. She testified that Eric's placement with the family was safe and appropriate, that he was very bonded to his foster parents, and that she thought it would be in Eric's best interest to terminate respondent's parental rights so that Eric's foster parents could adopt him.
Crawford said that DeAngelo was living with a relative who wished to adopt him. She testified that the placement was safe and appropriate and that DeAngelo wanted to be adopted by his foster parent. Crawford believed that it was in DeAngelo's best interest to terminate respondent's parental rights and free him for adoption.
Crawford testified that Desmetric and Dominitric were placed in separate residential facilities, due to behavioral problems. However, she said that the same relative that wished to adopt DeAngelo expressed a desire to adopt Desmetric and Dominitric and that this relative understood that both boys had behavior issues and special needs.
Donald Cutaiar, an employee of Maryville Academy, testified that Desmetric was placed in Maryville due to behavior problems. Though Cutaiar testified that Desmetric's behavior had improved slightly, he said that it fluctuated, and that he was not currently attempting to locate an adoptive placement for Desmetric. However, he told the court that he felt that adoption could be a long-term goal for the child.
Marilyn McManus, a social worker for Lawrence Hall, testified that Dominitric was placed in Lawrence Hall due to disruptive and violent behavior. She also testified that his behavior fluctuated. However, she said that they discussed placing Dominitric with the same relative that wanted to adopt DeAngelo and that Dominitric was excited about the possibility of being placed in that home.
Monica Lowe testified that Barna C. was living with her maternal aunt. Lowe said that she believed the home to be safe and appropriate for Barna. Though Barna did not wish to be adopted by her aunt, Lowe testified that the two had a close bond. Lowe said that Barna wanted to remain with her aunt through a subsidized guardianship and that Barna's aunt was committed to long-term care for her.
Ardyth Gist, the caseworker assigned to Demetrius, testified that he was placed with a non-relative foster parent in February 1996. She said that the placement was safe and appropriate and that his foster mother was willing to adopt him, but that Demetrius had some reservations about being adopted. However, she said that Demetrius had a close bond with his foster parent and that they had discussed subsidized guardianship.
Though respondent's attorney argued that the court should not terminate respondent's parental rights to Desmetric, Dominitric, and Barna because the children *45 were not in adoptive placements, the trial court terminated respondent's parental rights to all of the children except Detrice, whose caseworker did not appear at the hearing. The trial court set adoption as the goal for all of the children except Desmetric and Dominitric, and continued the case so that he could hear testimony from Detrice's caseworker.
At the subsequent hearing, Erica Hawkins testified that she was a caseworker with Catholic Charities, and was assigned to Detrice's case in October 1998. She said that Detrice was placed with a non-relative foster parent, and that it was a safe and appropriate home for Detrice. She said that Detrice had a good relationship with his foster parent, that he was integrated with the family, that his foster parent wanted to adopt him, and that he wanted to be adopted by his foster mother. The trial court found that it was in Detrice's best interest for respondent's parental rights to be terminated, and set a goal of adoption for him.
At the same hearing, Desmetric and Dominitric's caseworkers testified that they spoke with the children about the possibility of being adopted by DeAngelo's foster parent and that both boys expressed excitement. The children said that they wanted to work toward being placed in the same home with DeAngelo. Both caseworkers believed adoption to be a reasonable goal for the children. DeAngelo's foster parent was also present, and he told the court that he understood the special needs of both Desmetric and Dominitric, but felt that adoption was a reasonable goal. As a result, the trial court set the goal of adoption for both boys.
Respondent now contends that the trial court deprived her of due process by imposing sanctions under Supreme Court Rule 219 that included finding her in default and prohibiting her attorney from presenting evidence on her behalf. The children's guardian ad litem agrees with respondent and argues that the trial court was too harsh in its imposition of sanctions.
Supreme Court Rule 237(b) provides that a party may be compelled to appear at trial where the opposing party serves them with notice and that the trial court may impose sanctions pursuant to Supreme Court Rule 219(c)(166 Ill.2d R. 219(c)) where the party fails to comply with notice. 166 Ill.2d R. 237(b). The sanctions provided for in Rule 219(c) are:
"(i) that further proceedings be stayed until the order or rule is complied with;
(ii) that the offending party be debarred from filing any other pleading relating to any issue to which the refusal or failure relates;
(iii) that he be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue;
(iv) that a witness be barred from testifying concerning that issue;
(v) that, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that his action be dismissed with or without prejudice; or
(vi) that any portion of his pleadings relating to that issue be stricken and, if thereby made appropriate, judgment be entered as to that issue." 166 Ill.2d R. 219(c).
A trial court's imposition of sanctions will not be disturbed on review absent a showing of abuse of discretion. In re D.R., 307 Ill.App.3d 478, 482, 241 Ill. Dec. 93, 718 N.E.2d 664 (1999). However, a sanction causing a default judgment is proper only where the sanctioned party's conduct showed "deliberate, contumacious, or unwarranted disregard for the court's authority." In re D.R., 307 Ill.App.3d at 482, 241 Ill.Dec. 93, 718 N.E.2d 664, citing Hartnett v. Stack, 241 Ill.App.3d 157, 173, 180 Ill.Dec. 634, 607 N.E.2d 703 (1993).
Both respondent and the children's guardian ad litem cite In re D.R. to support *46 their argument that the trial court's imposition of sanctions violated respondent's due process rights. However, D.R. is factually distinguishable from this case.
In D.R., as in this case, the State filed a Rule 237(b) notice compelling the respondent's appearance at the hearing on the petition to terminate her parental rights. When she failed to appear, the trial court imposed sanctions under Rule 219 that included barring the respondent from presenting any defense, striking witnesses and exhibits, barring testimony, and entering a default judgment against the respondent. On appeal, we found that the trial court's sanctions were too harsh. We stated:
"In this case, respondent was present in court on two previous status conferences wherein she reiterated that she was contesting the petitions. On the day of the hearing, she informed counsel that she was eight months pregnant, not very mobile, had a mandatory appointment with her probation officer, and would not likely be able to come to court. Whether her failure to appear was voluntary or not, her counsel was present at the hearing and was prepared to argue on her behalf. There was no reason apparent from the record to deny counsel the right to proceed in respondent's absence, and no `deliberate and contumacious disregard' of the court's authority. Where the interests at stake are so finite, a mother's parental rights should not be lightly forfeited. [Citation.]" In re D.R., 307 Ill.App.3d at 483, 241 Ill. Dec. 93, 718 N.E.2d 664.
Our decision in D.R. was clearly based upon the respondent's prior cooperation in the proceedings along with her explanation for failing to appear at the hearing. Given the circumstances of that case, we did not find that respondent was in "deliberate and contumacious" disregard of the court's authority.
Here, the trial court noted that respondent was only present at hearings when she happened to be in prison. A review of the record shows that finding respondent, or an address where she could be served, was a continual problem throughout the proceedings. Respondent does not offer any explanation for her absence at the hearing, except to suggest that her attorney did not make enough effort to "keep [respondent] abreast of the proceedings." Though respondent argues that she did not have actual notice of the proceedings, as the respondent did in D.R., respondent has a duty to follow the progress of her case and to learn from her attorney the date of the termination hearing. In re C.L.T., 302 Ill.App.3d 770, 778, 235 Ill.Dec. 863, 706 N.E.2d 123 (1999). Furthermore, "[i]t is well settled that notice to an attorney is considered notice to the client, notwithstanding whether the attorney has actually communicated such knowledge to the client." In re D.R., 307 Ill.App.3d at 482, 241 Ill.Dec. 93, 718 N.E.2d 664.
The children's guardian ad litem argues that the trial court's imposition of sanctions was punitive, and therefore inappropriate. However, the trial court noted that it was not imposing sanctions to punish respondent, but was simply trying to "move [the] case along" and noted that respondent had "a history of failing to come in and engage with her lawyer unless she was brought in on a writ." Surely, this type of apathy is precisely the type of deliberate disregard that Rule 219(c)(v) was meant to target. See Hartnett v. Stack, 241 Ill.App.3d at 175-77, 180 Ill. Dec. 634, 607 N.E.2d 703.
Moreover, despite the trial court's finding that respondent was in default due to her failure to appear, respondent's attorney was still allowed to cross-examine witnesses and argue on her behalf. Thus, the trial court's sanction did not have the effect of a true default order, in which the court simply enters a judgment favoring the opposing party. In contrast, the respondent's attorney in D.R. was barred from cross-examining witnesses or arguing *47 on behalf of the respondent. In re D.R., 307 Ill.App.3d at 482, 241 Ill.Dec. 93, 718 N.E.2d 664. Given the circumstances of the present case, we do not find that the trial court's sanctions represent an abuse of discretion.
Respondent also contends that the State failed to prove that it was in the best interest of the children for her parental rights to be terminated. She argues that the record shows that she had been visiting the children in the year leading up to the hearing and claims that the State did not present any evidence to support a finding that it was in the best interest of the children for respondent's parental rights to be terminated.
"Once a parent has been found unfit by clear and convincing evidence, the decision to terminate an individual's parental rights rests within the sound discretion of the trial judge." In re Sheltanya S., 309 Ill.App.3d 941, 955, 243 Ill.Dec. 441, 723 N.E.2d 744 (1999). A review of the record shows that these children came into care due to respondent's drug addiction and repeated abandonment of one or more of them. Though the older children had been in care since 1989, respondent did not complete a drug rehabilitation program until 1997 and did not visit the children consistently until 1998. At the time of the hearing, the only children who were not in adoptive placements were working toward such placement or were in homes where the foster parent had agreed to subsidized guardianship.
Respondent argues that her attempts to "better herself" should weigh in her favor. However, because these attempts were made more than a year after the children were adjudicated neglected or dependent, the court could not consider them. In re D.L., 191 Ill.2d 1, 10, 245 Ill.Dec. 256, 727 N.E.2d 990 (2000) (evidence that may be considered under section 1(D)(m) of the Adoption Act limited to matters concerning the parent's conduct in the 12 months following the applicable adjudication of neglect, abuse, or dependency). In addition, though the DCFS case plans required respondent to attend parenting classes, complete psychological evaluations, and maintain a stable home, nothing in the record indicates that she had completed any of these tasks at the time of the hearing. Given these facts, we cannot say that the trial court abused its discretion in finding that it was in the children's best interest to terminate respondent's parental rights.
Accordingly, the judgment of the circuit court is affirmed.
Affirmed.
GORDON and McNULTY, JJ., concur.