Timothy T. RYAN, Jr., Plaintiff–
Appellant,

v.

COUNTY OF DuPAGE, and Sheriff Rich-
ard P. Doria and Deputy Sheriff Miller,
individually and in their official capaci-
ties, Defendants–Appellees.

No. 93–3893.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 22, 1994.

Decided Jan. 19, 1995.

Timothy T. Ryan, Jr. (submitted), Warrenville, IL, for plaintiff-appellant.

Thomas F. Downing, George J. Sotos, Office of the State's Atty. of DuPage County, Wheaton, IL, for defendants-appellees.

Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

POSNER, Chief Judge.

This appeal by the plaintiff in a suit under 42 U.S.C. § 1983 requires us to consider the limits of the right of protest in a courthouse. The plaintiff, Timothy Ryan, was the Democratic candidate for DuPage County Clerk of Court and the president of Court Crusade, a "watchdog" group that investigates corruption and impropriety in the court system and that had vigorously protested about the air quality at the DuPage County Courthouse, which the group believed to be infested by the bacteria that causes Legionnaires' Disease and which it attributed to (in Ryan's words) "the wilful misconduct of the Republican Demigods, who rule and govern this county."

One day a number of people working in the courthouse became ill because of a problem with the ventilation system, and the courthouse was closed. It reopened two days later, and on the day it reopened Ryan entered the courthouse to attend a hearing in a case to which he was a party. He was wearing a paper air-filtration mask which covered his mouth and nose. Court security officers at the entrance to the courthouse building ordered him to take off his mask and leave it with them if he wanted to enter. He complied, but left the building shortly, retrieving the mask on his way out. A quarter of an hour later he re-entered, this time with the mask in his briefcase to evade the security officers. Once inside the building he put on the mask and went to an upper floor where the courtrooms are. There defendant Miller, a deputy sheriff of DuPage County, accosted Ryan and ordered him to take off the mask. Ryan refused and Miller arrested him, detaining him for thirty minutes and then releasing him on the surprising condition that he could continue to wear the mask in the courthouse as long as he didn't tell anybody why he was wearing it.

The suit is against the county and its sheriff (Doria) as well as Miller. It charges violations of the First and Fourth Amendments, which have, of course, been held applicable to state action under the Fourteenth Amendment. After depositions of the *dramatis personae* (other than Miller, who however submitted two affidavits) were taken,

the district judge dismissed the suit on the grounds that Miller was entitled to qualified immunity, that Doria had not participated in the arrest, and that the county was not responsible for the policies of the sheriff's office.

■ It is plain that the county was properly dismissed; Illinois sheriffs are independently elected officials not subject to the control of the county. *Thompson v. Duke,* 882 F.2d 1180, 1187 (7th Cir.1989). But we have our doubts whether the sheriff was properly dismissed on the ground that he had not participated in the arrest. The sheriff was in charge of the courthouse, there was a rule against wearing masks in the courthouse, and Ryan was arrested because he wore a mask inside the courthouse. The arrest followed from the rule, and the rule was an act of the sheriff because he is the policymaker for the county sheriff's office. *Upton v. Thompson,* 930 F.2d 1209, 1215 (7th Cir.1991). He was therefore responsible for the arrest. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983).

■ It is true that the provenance of the rule is unclear; there is no indication of when it was promulgated—whether in Doria's reign or that of a previous sheriff. But the cases have assumed, we think correctly or at least inevitably, that the policymaker for a government office, who in this case is the sheriff, is responsible for the office's policies, whether they are created by him or merely inherited by him. Cf. *Wolf–Lillie v. Sonquist,* 699 F.2d 864 (7th Cir.1983).

■ There is a further wrinkle, however— a hint that the rule was actually promulgated not by Sheriff Doria or any of his predecessors, but by the chief judge of the circuit court of DuPage County, which occupies the county courthouse; a hint, that is, that the judge, not the sheriff, is the relevant policymaker. But it is not a definite enough hint to get the sheriff off the hook on summary judgment. The sheriff has "custody and care of the courthouse," Ill.Rev.Stat., ch. 55, ¶ 5/3–6017, and with that custody comes the authority to issue reasonable rules for main-

taining the safety and decorum of the building. See *Primm v. County of DuPage,* 1993 WL 338762, *4 (N.D.Ill.1993); 1912 Ill.Atty. Gen.Op. 254, 255; 1983 Ill.Atty.Gen.Op. 49, 50–51 ("the responsibility for the safety and security of the courthouse is vested in the sheriff"); cf. *Ruehman v. Sheahan,* 34 F.3d 525, 529 (7th Cir.1994). The rule against masks was, at least so far as the present record discloses, an exercise of this authority, and the sheriff must assume responsibility for it.

■ But it was a reasonable rule, and Ryan's arrest for violating it did not in our view violate any of his constitutional rights. The wearing of a mask inside a courthouse implies intimidation. Imagine what a witness in a criminal case would think, or a juror, if either saw masked people sitting in the spectator section of the courtroom. Considering that courts nowadays, especially state courts hearing criminal and domestic relations cases—such as the circuit court of DuPage County—have acute security problems, it would be the height of irresponsibility to allow masked people into courthouses. The very courthouse involved in this case has, the record shows, been the scene of a crime committed by a masked man.

If as we believe the rule is reasonable, it must be enforceable; and the next question bearing on the constitutional issues presented by the appeal is whether arresting the violator, and thus seizing him within the meaning of the Fourth Amendment, is a proper means of enforcement. The rule itself is not, of course, a criminal statute; its violation is not a crime. Nevertheless the arrest was proper if Ryan's action in disobeying Deputy Miller's order to remove the mask was a crime, for, if so, there is no doubt that Miller had probable cause to believe that Ryan had committed that crime. In lieu of arresting Ryan, Miller could have forcibly removed the mask from Ryan's face when Ryan refused to remove it; it would have been like confiscating illegal drugs or other contraband discovered in plain view, held lawful in *Minnesota v. Dickerson,* —— U.S. ——, —— – ——, 113 S.Ct. 2130, 2136–37, 124 L.Ed.2d 334 (1993). But no principle of either Illinois or federal law forbids an other-

wise lawful arrest merely because the objective of the arrest could be achieved by an alternative means, which in this case might have been the more violent.

■ Was the arrest lawful? Resistance to a lawful order of a police officer is a crime under Illinois law, Ill.Rev.Stat., ch. 720, ¶ 5/31–1(a), but Ryan points to cases which hold that to constitute grounds for a valid arrest the resistance must be *physical;* merely verbal resistance or refusal to cooperate is not enough. *People v. Weathington,* 82 Ill.2d 183, 44 Ill.Dec. 496, 497–98, 411 N.E.2d 862, 863–64 (1980); *People v. Hilgenberg,* 223 Ill.App.3d 286, 165 Ill.Dec. 784, 787–88, 585 N.E.2d 180, 183–84 (App.1991); *People v. Stoudt,* 198 Ill.App.3d 124, 144 Ill.Dec. 466, 468, 555 N.E.2d 825, 827 (App.1990). These are state cases, construing Illinois law, and the issue here is one of federal constitutional law. *Gordon v. Degelmann,* 29 F.3d 295, 300–01 (7th Cir.1994). But the legality under the Fourth Amendment of an arrest for violating state law depends on that law in the following sense: there must be probable cause to believe that a state crime has been committed, *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979), and in Illinois the crime of resisting an officer in the performance of his duty requires physical resistance. The requirement is satisfied. The physical resistance took the form of Ryan's refusing to take off the mask, which left the police with a choice between arresting him and removing the mask forcibly. "Going limp" has been deemed physical resistance under Illinois law. *People v. Weathington, supra,* 44 Ill. Dec. at 497, 411 N.E.2d at 863; *People v. Raby,* 40 Ill.2d 392, 240 N.E.2d 595, 599 (1968); *People v. Hilgenberg, supra,* 165 Ill. Dec. at 785, 585 N.E.2d at 183; cf. *People v. Woidtke,* 224 Ill.App.3d 791, 167 Ill.Dec. 486, 587 N.E.2d 1101, 1109–10 (1992); *People v. Stoudt, supra,* 144 Ill.Dec. at 468, 555 N.E.2d at 827. This was not a case of "mere argument." *People v. Weathington, supra,* 44 Ill.Dec. at 498, 411 N.E.2d at 864.

Even if this is wrong, Ryan can hardly argue that Miller violated a *clearly established* right of his in arresting him for resisting the order to remove his mask. *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), therefore immunizes Miller from liability for damages, even if he violated the Fourth Amendment, which we think he did not. Doria's immunity defense to the Fourth Amendment claim was rejected by the district court and has been abandoned on appeal, but his only responsibility was for the anti-mask rule, and it was a proper rule, so he is off the liability hook as well. He would not be liable for Miller's enforcing the rule improperly unless he told Miller to do so, which is not suggested.

We note that Miller was in all likelihood entitled to arrest Ryan for disorderly conduct as well, defined in Illinois as acting "in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace," Ill.Rev.Stat., ch. 720, ¶ 5/26–1(a)(1)—an apt description of Ryan's conduct. "Refusal to obey the lawful order of police may form the basis of a disorderly conduct prosecution." *People v. Yocum,* 24 Ill.App.3d 883, 321 N.E.2d 731, 733 (1974). Miller actually stated in his incident report that he had arrested Ryan for disorderly conduct. For reasons that have not been explained, in court he dropped the reference to disorderly conduct and instead defended the arrest on the basis that Ryan had been resisting a police officer.

■ It would make no difference to our conclusion concerning the Fourth Amendment issues if the anti-mask rule were deemed unreasonable because it contains no exception for cases in which a mask is worn for medical reasons. Ryan's stated ground for refusing to remove the mask was that he was afraid of catching Legionnaires' Disease. In that event he should have left the courthouse. A judgment had been made, rightly or wrongly, that the air in the courthouse was no longer dangerous to human health. If Ryan disagreed with the judgment, he could leave the building, and if this resulted in his losing his case, on grounds of default or otherwise, he could move for relief from the judgment (whether civil or criminal—we do not know what kind of case it was) on the ground that he should not be penalized for wanting to preserve his health. Ill.Rev.Stat., ch. 725, ¶ 5/115–4.1(e); *id.,* ch. 735, ¶¶ 5/2–

1301(e), 5/2–1401. "A liberal policy exists with respect to vacating defaults" in Illinois. *Stotlar Drug Co. v. Marlow*, 239 Ill.App.3d 726, 180 Ill.Dec. 452, 454, 607 N.E.2d 346, 348 (1993); cf. *Hartnett v. Stack*, 241 Ill. App.3d 157, 180 Ill.Dec. 634, 647, 607 N.E.2d 703, 716 (1993). · Given that he had orderly processes available to him for challenging the rule or its application to him, he was not justified in sitting in in violation of the rule. *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

■ There is a deeper point. An arrest for disobeying a government statute, rule, or decree cannot, in general, be challenged *under the Fourth Amendment* by challenging the validity of the statute, rule, or decree. If there is probable cause to believe that the defendant has committed a crime by violating some rule, the rule's invalidity, while a defense to a conviction for the crime, is not a ground for his challenging the arrest for violating the rule under the Fourth Amendment, *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); see also *Michigan v. DeFillippo, supra*, 443 U.S. at 38, 99 S.Ct. at 2632–33; *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), unless the invalidity of the rule was or should have been plain to the arresting officers. *Gordon v. Degelmann, supra*, 29 F.3d at 300–01; *Buffkins v. City of Omaha*, 922 F.2d 465 (8th Cir.1990). Obviously that was not the case here; we have just held that the rule under which Ryan was arrested was valid.

Under the old doctrine that unconstitutional statutes are "void ab initio," *Norton v. Shelby Co.*, 118 U.S. 425, 442, 6 S.Ct. 1121, 1125–26, 30 L.Ed. 178 (1886), Ryan might have had an argument that if the anti-mask rule is invalid it always was invalid, so there was no basis for his arrest. The rule is not invalid, and the doctrine has been abandoned. *Lemon v. Kurtzman*, 411 U.S. 192, 199, 93 S.Ct. 1463, 1468–69, 36 L.Ed.2d 151 (1973); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318–19, 84 L.Ed. 329 (1940). It never made any sense in the context of the Fourth Amendment, the purpose of which is to protect people against searches and seizures that lack probable cause rather than to give an additional remedy to someone arrested under a statute later found to violate a different provision of the Constitution.

■ If, however, the motive in arresting Ryan was not to enforce the anti-mask rule but to punish him for publicly criticizing the management of the courthouse or for engaging in an "expressive," speech-like act—the wearing of a mask as a protest against the sheriff's failure to maintain a healthy courthouse—an issue arises under the First Amendment. Or rather two issues: whether the arrest was intended to deter Ryan from protesting, and whether, even if not, the wearing of a mask inside a courtroom (for there is no doubt that Ryan was intercepted en route to the courtroom in which his case was being heard), or at least inside a courthouse, is a constitutionally protected form of speech. The first issue is rather easily resolved. There is no evidence that Deputy Miller's motive in arresting Ryan was anger or irritation at Ryan's protesting against poor quality of the air in the courthouse. So far as appears, *anyone* wearing a mask would have been asked to remove it and upon refusing would have been arrested. This may seem implausible; it may seem common sense that Miller was out to get Ryan in retaliation for being a pest. But pretrial discovery failed to unearth any evidence of this. And it is relevant to note that when asked to remove the mask, Ryan did not say that he was wearing it to protest the poor quality of the air in the courthouse; he said he was wearing it to save his throat and lungs from the bad air. The mask was not being used as a symbol; it was being used for its original purpose as a medical appliance. The First Amendment does not confer a right to use medical appliances.

Our conclusion that there is no evidence that Ryan was arrested because he was a protester may seem inconsistent with the fact that he was allowed to resume wearing the mask on condition that he not tell anyone *why* he was wearing it. This may make it seem that Miller was trying to stifle protest. But an equally plausible inference, which Ryan has not attempted to refute, is that Miller did not want Ryan to cause a panic

among the people working in the courthouse or present there as witnesses, jurors, or lawyers by telling them that the air was not fit to breathe unless one was wearing a protective mask. As long as he did not tell anyone why he was wearing the mask, most people would assume that he had a respiratory disease, or allergies, or an impaired immune system, or some other condition that required him to wear a dust mask; one occasionally sees people wearing masks for this purpose. One assumes when one sees such people that they have a problem peculiar to themselves, that they are not in normal health. The reaction would be different if one of them started shouting that the local nerve-gas factory had just blown up.

■ Yet if the anti-mask rule is invalid because of its impact on the freedom of expression of persons who do want to wear masks to protest poor air quality, noxious chemicals, or the use of poison gas in warfare rather than just to protect themselves, Ryan may well, under the rule of *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–43, 84 L.Ed. 1093 (1940), have standing to contest the rule on First Amendment grounds even if his own motivation in wearing a mask was unrelated to expression, and likewise his arrest. See also *Gooding v. Wilson*, 405 U.S. 518, 520–21, 92 S.Ct. 1103, 1105–05, 31 L.Ed.2d 408 (1972); *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir.1985). We must therefore consider whether a courthouse can ban masked protesters from its interior. The Supreme Court's decision in *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), has created an impression in some circles that states cannot restrict protest activities in courthouses; but the impression is false. The defendant in that case had walked through a courthouse corridor wearing a jacket on which was written the slogan, "Fuck the Draft." (This was during the Vietnam War.) The Supreme Court held that the defendant's conviction for breach of the peace violated the First Amendment. The Court emphasized, however, that Cohen had been convicted not under a statute designed to maintain decorum in courthouses, but under a general prohibition of "offensive conduct" wherever engaged in;

the location of his protest had been irrelevant. *Id.* at 19, 91 S.Ct. at 1785.

The rule under which Ryan was arrested was a rule designed to maintain security and decorum *in a courthouse,* and so, unlike the situation in *Cohen,* the high social value that society properly attaches to assuring that a courthouse is a place in which rational reflection and disinterested judgment will not be disrupted by intimations of violence, or by the subtler hints of coercion implicit in demonstrations, marches, placards, sit ins, chants, and other "hot," emotive modes of expression, is available to justify the rule. *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970); *Cox v. Louisiana,* 379 U.S. 559, 562, 85 S.Ct. 476, 479, 13 L.Ed.2d 487 (1965); *United States v. Seale,* 461 F.2d 345, 367 (7th Cir.1972); *Dorfman v. Meiszner,* 430 F.2d 558, 562 (7th Cir.1970); *Norris v. Risley,* 918 F.2d 828, 832–33 (9th Cir.1990); *United States v. Bader,* 698 F.2d 553, 556 (1st Cir.1983); *Claudio v. United States,* 836 F.Supp. 1219, 1225 (E.D.N.C.1993). Demonstrations outside a courthouse stand on a different footing, *United States v. Grace,* 461 U.S. 171, 179, 103 S.Ct. 1702, 1708, 75 L.Ed.2d 736 (1983), but there is no contention that the defendants or any other public officials tried to prevent Ryan's group from demonstrating outside.

It is true that judicial opinion appears to be divided over whether prohibitions against appearing masked in a public place violate the First Amendment. Compare *State v. Miller,* 260 Ga. 669, 398 S.E.2d 547 (1990); *Hernandez v. Superintendent,* 800 F.Supp. 1344 (E.D.Va.1992), and *Schumann v. New York,* 270 F.Supp. 730 (S.D.N.Y.1967)—answering "no"—with *Robinson v. State,* 393 So.2d 1076 (Fla.1980); *State v. Gates,* 118 Ariz. 357, 576 P.2d 1357, 1359 (1978); *Ghafari v. Municipal Court,* 87 Cal.App.3d 255, 150 Cal.Rptr. 813, 815 (1978), and *Aryan v. Mackey,* 462 F.Supp. 90 (N.D.Tex.1978)—answering "yes." Probably there is no real conflict. The "yes" cases are concerned with the breadth of the prohibition and the absence of appropriate, speech-related exceptions; both *Ghafari* and *Aryan* involved protests by Iranian students who feared violent retaliation if they could not appear masked.

No case suggests that a prohibition of masks limited to the interior of a courthouse is constitutionally questionable.

Ryan had no right under either the First or the Fourth Amendment to stroll through the DuPage County Courthouse wearing a mask. Obviously, then, he has no clearly established such right, which he would need in order to be allowed to obtain an award of damages against any of these defendants.

The appeal raises other issues but they have too little merit to warrant discussion. The judgment dismissing the suit is

AFFIRMED.