Spaulding v. Newport                    CV-94-316-SD  01/31/96

UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Bert Spaulding, Sr.


     v.                                    Civil No. 94-316-SD


Town of Newport;
Arthur Bastian, individually and
 in his official capacity as
 Chief of Police of the Newport
 Police Department;
Henry Rodeschin, individually and
 in his official capacity as
 Chairman of the Board of
 Selectmen of the Town of Newport



                         O R D E R


     In this civil action, plaintiff Bert Spaulding, Sr., a

selectman for the Town of Newport, asserts various claims

pursuant to 42 U.S.C. § 1983 (1994) and New Hampshire law against

defendants Henry Rodeschin, Arthur Bastian, and the Town of

Newport.  His claims arise from his arrest at a meeting of the

board of selectmen at which he sought to temporarily step down

from his position on the board and speak as a private citizen.

     Presently before the court is defendants' motion for summary

judgment on all counts, to which plaintiff objects.

<u>Background</u>

On August 19, 1991, the town board of selectmen convened in Newport, New Hampshire, as was its regular practice. The evening's agenda was to begin with a "citizens' participation" segment in which local citizens could raise issues to, and elicit answers from, board members. Also scheduled for later on in the evening was a "miscellaneous" period, reserved for agenda items brought by selectmen. Selectman Spaulding, a self-described "town gadfly," <u>see</u> Complaint ¶ 7, who had a decade-long history of confronting and challenging various branches of the town's government, including the zoning board and the planning board, as well as the board of selectmen itself, was seated in the audience.

The following recitation comes from the court's review of a videotape, which both sides agree adequately represents what transpired at the August 19 meeting. <u>See</u> Exhibit A (videotape) (attached to Defendants' Motion for Summary Judgment). Rodeschin, the board's chairman, called the meeting to order. Several members of the audience, including Spaulding, raised their hands. Rodeschin passed over Spaulding three times, favoring private citizens, who addressed the board on sundry matters.

2

Following the presentation by the third individual, Rodeschin turned to Spaulding and, after recognizing that Spaulding had raised his hand several times, said:

> As I have told you at the last meeting and as the minutes of our previous meeting show, we have adopted procedural rules as to when a selectman should address the board. I see no reason to change those rules; therefore, the rules are still in place. Therefore, if you would like to address the board you must take your rightful place with the board. And, you had your opportunity to make some comments under your agenda review to add or delete, and you had your right and will have your right to address the board under "miscellaneous" even though you choose to not sit at this table [at which other selectmen were seated]; therefore I am not going to recognize you. . . .

Spaulding responded, "I would like to read you a legal opinion . . . ." Rodeschin then stated that Spaulding was out of order; Spaulding continued to read from the legal opinion. At this point, in response to a motion by another selectman, Rodeschin immediately recessed the meeting. The meeting soon after reconvened when Spaulding's wife Jackie asked to be heard. When she began speaking, Spaulding stood in front of her and again began to read from the legal opinion.

Following an exchange between Spaulding and another selectman, Rodeschin again informed Spaulding that he would recognize him during the "miscellaneous" period. When Spaulding refused to keep silent, Rodeschin called for order several times

3

and informed him that he would have to take the necessary measures to have Spaulding removed from the room. Then, looking at Bastian, Rodeschin said, "Chief, I ask that you help restore order to this meeting." Bastian approached Spaulding and requested that he leave the room. Instead of leaving, Spaulding inquired whether he was under arrest. Bastian said that Spaulding was under arrest for disorderly conduct. On the way out, Bastian removed from Spaulding's video camera a tape that had recorded the meeting, up to the point of the arrest.

Spaulding brings suit pursuant to section 1983, claiming, inter alia, that defendants "unconstitutionally suppressed" his speech and arrested him without probable cause in violation of the First, Fourth, and Fourteenth Amendments to the Constitution. He further brings a conspiracy claim under section 1983 against all defendants, as well as state-law negligence claims.

## Discussion

### 1. Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is

4

not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255.

2. Rodeschin and the First Amendment

Spaulding argues that Rodeschin violated his First Amendment rights when he enforced the board's procedural rules against him.

5

When the state designates a forum as public,[1] any regulation of speech therein is susceptible to scrutiny under the First Amendment. If a rule discriminates against speakers on the basis of their viewpoint or opinions, it will be subject to the highest level of scrutiny. Rosenberger v. Rector & Visitors of Univ. of Va., ___ U.S. ___, ___, 115 S. Ct. 2510, 2516-17 (1995) (citing Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 806 (1985); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 49 (1983)). Similarly, regulations based on the content of a speaker's message are also subject to rigorous scrutiny, while restrictions unrelated to the content of speech are subject to an intermediate level of scrutiny. See Turner Broadcasting Sys., Inc. v. FCC, ___ U.S. ___, ___, 114 S. Ct. 2445, 2459 (1994), reh'g denied, ___ U.S. ___, 115 S. Ct. 30 (1994) (citation omitted).

Consequently, the first issue that must be determined is whether a particular restriction is content-based or content-neutral. This question is generally resolved by considering both whether the rule, by its terms, distinguishes "favored speech

---

[1]The parties agree that by opening up a portion of their meeting to citizens' participation, the selectmen created or "designated" a public forum, and the court will therefore assume the meeting otherwise possessed the characteristics of such a forum.

from disfavored speech on the basis of the ideas or views expressed," id., and whether the rule's "manifest purpose is to regulate speech because of the message it conveys," id. at 2461. However, "'[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.'" National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 737 (1st Cir.) (quoting City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48, reh'g denied, 475 U.S. 1132 (1986)), cert. denied, ___ U.S. ___, 115 S. Ct. 2247 (1995).

Spaulding contends that in enforcing the "no-selectmen rule" Rodeschin and the Town violated the First Amendment. The no-selectmen rule adopted by the board provides that the citizens' participation segment is reserved for private citizens who wish to address the board with their comments and questions; selectmen should address the board during the miscellaneous or agenda review section. See Exhibit 2 (videotape) (attached to Plaintiff's Objection). The no-selectmen rule, by its terms, does not prevent a selectman from speaking to the board as a citizen at other times in the meeting.

7

Defendants respond that the rule's "manifest purpose" is merely to structure the meeting, rather than to regulate speech because of the message conveyed.[2]

Meetings held by local governing bodies occupy their own corner of First Amendment jurisprudence. On the one hand, when a local board invites commentary from the public, it resembles the traditional public forum, which time immemorial has been sanctified as a place for unfettered debate and commentary, and the airing of various views. See, e.g., Perry Educ. Ass'n, supra, 460 U.S. at 45. On the other hand, in the interest of the efficient execution of town business, local governmental bodies are generally granted latitude to regulate the public discussion.[3] See Kindt v. Santa Monica Rent Control Bd., 67 F.3d

---

[2]On its face, the no-selectmen rule appears to be content-neutral. The restriction makes no reference to the content of a speaker's speech, nor does it make distinctions based on the viewpoint of the speaker. Indeed, the board member who introduced the rule during a July 15, 1991, meeting stated that the rule was necessary to reserve citizens' participation for citizens who would not otherwise have an opportunity to address the board. Second Supplemental Affidavit of Bert Spaulding ¶ 6 (attached as Exhibit 12 to Plaintiff's Objection); Exhibit 2 (videotape) (attached to Plaintiff's Objection). No one mentioned as a reason the suppression of viewpoint. Id.

[3]Indeed, the importance of protecting the interest of local governing bodies in structuring their own meetings was recognized by Justice Potter Stewart in a concurring opinion,

> And in trying to best serve its informational
> needs while rationing its time, I should

8

266, 271 (9th Cir. 1995) (board's interest in orderly, efficient meetings justified rule that citizens could speak only for limited time at end of meeting); Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989) (mayor had "important interest" in confining plaintiff to the designated topic and in preventing disruption of open meeting); Wright v. Anthony, 733 F.2d 575, 577 (8th Cir. 1984) (five-minute time limitation was reasonable restriction, justified by significant governmental interest in conserving time).[4]  As the Ninth Circuit recently observed,

> suppose a public body has broad authority to permit only selected individuals--for example, those who are recognized experts on a matter under consideration--to express their opinions.  I write simply to emphasize that we are not called upon in this case to consider what constitutional limitations there may be upon a governmental body's authority to structure discussion at public meetings.

City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Comm'n, 429 U.S. 167, 180  (1976) (Stewart, J., concurring).

[4]The no-selectmen rule is arguably more problematic than the rules adopted in Kindt, Jones, and Wright, however, in that it makes distinctions between members of the public (selectmen versus non-selectmen), while the rules in those cases applied equally to all.  See, e.g., Turner Broadcasting, supra, ___ U.S. at ___, 114 S. Ct. at 2476 ("The government does have the power to impose content-neutral time, place, and manner restrictions, but this is in large part precisely because such restrictions apply to all speakers.") (O'Connor, J., concurring).  When a meeting is opened to the public, it is generally unconstitutional

9

"Citizens are not entitled to exercise their First Amendment rights whenever and wherever they wish." Kindt, supra, 67 F.3d at 269 (citing Adderley v. Florida, 385 U.S. 39, 47-48 (1966)).

Nevertheless, despite the apparent neutrality of the no-selectmen rule, the ultimate issue before the court remains whether the board or Rodeschin engaged in impermissible viewpoint discrimination. See Turner Broadcasting, supra, ___ U.S. at ___, 114 S. Ct. at 2460-61 (regulations that make distinctions between speakers are tolerated under the First Amendment only if they are not a subtle means of disguising viewpoint discrimination); see also AIDS Action Comm. of Mass. v MBTA, 42 F.3d 1, 4 (1st Cir. 1994) (recognizing that statute could be unconstitutional if, through its enforcement, it appears to be hostile to expression of certain viewpoints) (citing R.A.V. v. City of St. Paul, 505 U.S. 377, 390-93, (1992)).

---

to exclude or discriminate against citizens by virtue of a status-based classification, particularly when such prohibitions prevent members of a class from engaging in public debate. Madison Sch. Dist., supra, 429 U.S. at 173-76 (state transgressed First Amendment when it prohibited certain teachers from speaking at some school board meetings opened to the public); see also Rosenberger, supra, ___ U.S. at ___, 115 S. Ct. at 2518 (noting that excluding certain views from a public debate offends the First Amendment).

a.  Qualified Immunity

Plaintiff contends that Rodeschin was improperly motivated when he enforced the rule against Spaulding at the August 19 meeting.  Rodeschin in turn asserts that he has qualified immunity.

Government officials, including law enforcement officers, who perform discretionary functions are entitled to qualified immunity from suit in civil rights actions under section 1983, provided "their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable [government official] would have known.'"  Hegarty v. Somerset County, 53 F.3d 1367, 1372 (1st Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), and citing Burns v. Loranger, 907 F.2d 233, 235 (1st Cir. 1990)), cert. denied, 64 U.S.L.W. 3412, 3416 (U.S., Dec. 11, 1995) (No. 95-629).

Thus, the court should assess whether the constitutional right allegedly violated was clearly established at the time of the violation and whether "an objectively reasonable [official], similarly situated, could have believed that the challenged [] conduct did not violate . . .  constitutional rights."  Hegarty, 53 F.3d at 1373 (citing Burns, supra, 907 F.2d at 236) (emphasis in Hegarty).

11

The qualified immunity analysis is normally limited to an inquiry into the objective reasonableness of the official's conduct, and does not require a determination of such subjective criteria as state of mind. See Harlow, supra, 457 U.S. at 818-20. However, in Harlow, the Supreme Court did not explain "'how th[e] objective standard is to be employed when the plaintiff's claim depends on the state of mind of the defendant officials.'" Rakovich v. Wade, 850 F.2d 1180, 1210 (7th Cir. 1988) (quoting Benson v. Allphin, 786 F.2d 268, 274 (7th Cir.), cert. denied, 479 U.S. 848 (1986)). Here, intent is an integral part of plaintiff's claim under the First Amendment. See Vacca v. Barletta, 933 F.2d 31, 35 (1st Cir.) (holding that school committee chairperson asserting qualified immunity defense is not entitled to summary judgment where genuine dispute existed as to whether he enforced content-neutral rule for purpose of suppressing speech), cert. denied, 502 U.S. 866 (1991); Musso v. Hourigan, 836 F.2d 736, 742 (2d Cir. 1988) (member of board of education not entitled to summary judgment if evidence supports that he silenced plaintiff because he disagreed with plaintiff's speech); see also Ryan v. County of DuPage, 45 F.3d 1090, 1094 (7th Cir. 1995) (arrest may violate First Amendment if motivated by desire to punish plaintiff for publicly criticizing management of courthouse); Mendocino Envtl. Ctr. v. Mendocino County, 14

12

F.3d 457, 464 (9th Cir. 1994) (noting that plaintiff must show intent in order to support claim that governmental action was designed to chill political expression).

From these authorities, the court concludes Rodeschin is not entitled to qualified immunity if he was motivated by an intent to suppress Spaulding's speech when he enforced the no-selectmen rule against Spaulding at the August 19 meeting. Although Spaulding need not prove Rodeschin's sole motive was to suppress Spaulding's speech, he still must show this motive was the determining or motivating factor, in the sense that Rodeschin would not have acted "but for" the improper purpose. See Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994) (applying "but for" standard available to mixed motive employment discrimination claims to cause of action alleging police officer arrested plaintiff in order to interfere with his freedom of speech).

Spaulding makes several arguments to support that Rodeschin was motivated by an intent to suppress plaintiff's point of view. Perhaps most compelling is evidence that Rodeschin exhibited animus against Spaulding at prior meetings of the board held on August 5 and July 15, 1991. At the August 5 meeting, when Spaulding attempted to speak during citizens' participation, Rodeschin made the following statements:

13

a) You're not a citizen, you're a Selectman you can't have it both ways.

b) You can't have it both ways, you were elected you accepted the fact that you are now a selectman, a distinct group otherwise known as the Town Fathers, you have the right to sit here you choose not to sit here for whatever your reasons I can't answer that.

c) You have a choice, you can sit here with us or you can sit on that side of the table if you want, but have to do that as a citizen.

d) One way out of your dilemma is to tender your resignation and if that's what you choose to do, you write up your resignation, hand it to me, and I on behalf of the board will accept it, then I will recognize you. If not, I will not recognize to discuss things under citizen's participation.

Second Supplemental Affidavit of Spaulding (attached as Exhibit 12 to Plaintiff's Objection) ¶ 18; Exhibit 2 (videotape) (attached to Plaintiff's Objection).

Similarly, when Rodeschin attempted to enforce the rule against Spaulding at the July 15 meeting, he and Spaulding entered into a heated exchange from which a reasonable fact finder could infer personal animus between the men. Id. at ¶¶ 6-8. Although rational minds certainly could differ, the court finds and rules that plaintiff has satisfied his burden: a factual issue exists as to whether the determining factor behind Rodeschin's decision to enforce the rule against Spaulding was a desire to suppress Spaulding's point of view. Accordingly,

14

Rodeschin is not entitled to summary judgment on the ground of qualified immunity.


3.  The Town of Newport

In order to sustain a section 1983 claim against a municipality, plaintiff must show that (1) he was deprived of a constitutional right and (2) a municipal policy, custom, or use was the "moving force" behind the deprivation.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978).

As explained in Monell,

> [A] local government may not be sued under §
> 1983 for injury inflicted solely by its
> employees or agents.  Instead it is when
> execution of a government's policy or custom,
> whether made by its lawmakers or by those
> whose edicts or acts may fairly be said to
> represent official policy, inflicts the
> injury that the government as an entity is
> responsible under § 1983.

Id.

Holding a municipality "liable only if the injury results from an officially sanctioned policy or custom, exempts the municipality from responsibility for the aberrant and unpredictable behavior of its employees while making it liable for acts and conduct rightly attributable to the city."  Bordanaro v. McLeod, 871 F.2d 1151, 1155 (1st Cir.), cert. denied, 493 U.S. 820 (1989).

15

"'"Congress included customs and usages [in § 1983] because of the persistent and wide-spread discriminatory practices of state officials. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute 'custom or usage' with the force of law."'" Id. at 1155-56 (quoting Monell, supra, 436 U.S. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 169-70 (1970))).

Similarly, "'official policy' often refers to formal rules or understandings--often but not always committed to writing--that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986). However,

> a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

Id. at 481 (footnote omitted).

16

Defendant Town of Newport argues it is entitled to summary judgment because Bastian and Rodeschin did not violate Spaulding's rights in enforcing the no-selectmen rule and in subsequently arresting Spaulding. The court has held that a genuine factual dispute exists as to whether Rodeschin violated plaintiff's rights. A reasonable juror could find Rodeschin's conduct represented the town's "custom or policy". Accordingly, the town is not entitled to summary judgment.

4. The Arrest

Plaintiff challenges his arrest on the ground that Rodeschin and Bastian violated his rights secured by the First and Fourth Amendments.

Under the Fourth Amendment's guaranty against unreasonable seizures of the person, arrests must be based on probable cause. Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 349 (1st Cir. 1995) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)); accord Ryan v. County of DuPage, 45 F.3d 1090, 1093 (7th Cir. 1995) (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)). The probable cause analysis requires an assessment of objective criteria--whether, at the moment of arrest, "'the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a

17

prudent [person] in believing that the [defendant] had committed or was committing an offense.'"  U.S. v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) (quoting Beck, supra, 379 U.S. at 91).

Spaulding was arrested for disorderly conduct, which is defined under New Hampshire law as follows:

> A person is guilty of disorderly conduct if:
> . . . .
> II. He:
> (e) Knowingly refuses to comply with a lawful order of a peace officer to move from any public place; or
> III.  He purposely causes a breach of the peace, public inconvenience, annoyance or alarm, or recklessly creates a risk thereof, by:
> . . . .
> (b) Disrupting the orderly conduct of business in any public or governmental facility; or
> (c) Disrupting any lawful assembly or meeting of persons without lawful authority.
> IV.  In this section:
> (a) "Lawful order" means:
> (1) A command issued to any person for the purpose of preventing said person from committing any offense set forth in this section, or in any section of Title LXII or Title XXI, when the officer has reasonable grounds to believe that said person is about to commit any such offense, or when said person is engaged in a course of conduct which makes his commission of said offense imminent; or
> (2) A command issued to any person to stop him from continuing to commit any offense set forth in this

18

> section, or in any section of Title
> LXII or Title XXI, when the officer
> has reasonable grounds to believe
> that said person is presently engaged
> in conduct which constitutes any such
> offense.

See RSA 644:2 (1986).

The undisputed facts on the record show that despite being repeatedly declared out of order by Rodeschin, Spaulding persisted in speaking at the August 19 board meeting. Rodeschin, as the presiding officer at the selectmen's meeting, had the "'responsibility of conducting the meeting in an orderly manner.'" State v. Dominic, 117 N.H. 573, 575, 376 A.2d 124, 126 (1977) (quoting 4 E. McQuillin, Municipal Corporations § 13.21 (3d ed. 1968)). He also had the authority of asking the assistance of Bastian in removing Spaulding, once Spaulding refused to leave. Id., 117 N.H. at 576, 376 A.2d at 126 (citing Arrington v. Moore, 358 A.2d 909, 916 (Md. Ct. Spec. App. 1976)). It is further undisputed that when Bastian asked that he leave the room, Spaulding failed to comply. In light of the undisputed facts and circumstances present at the moment of arrest, a reasonable person[5] in Bastian's position could have believed that Spaulding

---

[5]Plaintiff asserts that there is a genuine factual issue precluding summary judgment as to whether Spaulding actually disrupted the meeting on August 19 and whether the disruption violated RSA 644:2. Plaintiff's Objection at 12. However, the relevant question is not the actual legality of plaintiff's

19

was preventing the meeting from continuing and was thus being disorderly, as well as that he refused to comply with the lawful order of a police officer. Accordingly, the court concludes that Bastian had probable cause to arrest.

The presence of probable cause does not automatically cloak Bastian with qualified immunity, however. Spaulding may avoid summary judgment on his First Amendment claim if he tenders competent evidence that Bastian was motivated by an intent to suppress his point of view and that such was a determining factor in Bastian's decision to arrest Spaulding. See Ryan, supra, 45 F.3d at 1094 (recognizing possibility of a First Amendment violation if police officer effectuated arrest for improper purpose, notwithstanding the existence of probable cause); Sloman v. Tadlock, 21 F.3d 1462, 1469-70 (9th Cir. 1994) (liability against police officer is supportable by evidence that officer issued citations and warnings for the purpose of chilling political speech); see also Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992) (conferring qualified immunity where probable cause exists independent of defendants' motivation but noting that qualified immunity would not exist if the

---

conduct, but whether Rodeschin and Bastian had reason to believe plaintiff violated New Hampshire law.

20

determination of probable cause had been the result of defendant's improper purpose).

To support that Bastian was motivated by an intent to suppress Spaulding's speech, plaintiff suggests that Bastian selectively enforced the disorderly conduct statute. Spaulding finds it curious that he was the only one arrested at a board meeting, when others who are frequently more vocal and aggressive than he have escaped punishment. However, plaintiff's argument suffers upon examination of the supporting documents. First, while Bastian perhaps has not demonstrated absolute consistency, he has been consistent enough to deflect allegations of improper purpose. For example, when another citizen refused to come to order at a prior meeting despite being held out of order by the chairman, Bastian removed the citizen from the room, which is similar to his subsequent conduct with Spaulding. Supplemental Affidavit of Bert Spaulding ¶ 2(j) (attached as Exhibit 6 to Plaintiff's Objection to Motion for Summary Judgment); Exhibit 1 (videotape) (attached to Plaintiff's Objection). Second, from his supporting affidavit and videotape, it becomes clear that the "others" that Spaulding refers to are really other occasions when he himself strenuously challenged the Board. See, e.g., Supplemental Affidavit ¶ 1(e); Exhibit 1 (videotape). There is no showing that Bastian was even present on many of these

21

occasions. Furthermore, evidence showing that the board treated Spaulding himself in a different manner on different occasions has limited probative value on the issue of whether Bastian selectively singled him out for mistreatment.

In sum, plaintiff has failed to show either the absence of probable cause or that Bastian was motivated by an improper purpose; accordingly, the court finds that Bastian is entitled to qualified immunity under section 1983 as to plaintiff's First and Fourth Amendment claims. However, for reasons already expressed, a genuine issue exists as to whether Rodeschin had probable cause to believe Spaulding was being disruptive. Accordingly, the court denies Rodeschin's motion for summary judgment on plaintiff's claim under the Fourth Amendment.

Plaintiff next appears to contend that the disorderly conduct statute is unconstitutional. The court construes plaintiff's argument to be that the disorderly conduct statute is void under the Due Process Clause because it is overly vague. "'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'" Veiga v. McGee, 26 F.3d 1206, 1212 (1st Cir. 1994) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). From the court's review, however, the statute clearly defines its

22

prohibitions, and thus does not contravene the Constitution[6].

## 5.  Conspiracy

Spaulding alleges that Rodeschin, the Town, and Bastian conspired to deprive him of constitutional rights in violation of section 1983.  For a conspiracy to be actionable under section 1983, plaintiff must show both an agreement and an actual deprivation of a constitutional right.  Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989).  However, "'[t]he gist of the [section 1983] cause of action is the deprivation and not the conspiracy.'"  Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980) (citations and quotations omitted).

The court has found that plaintiff's claims against Rodeschin and the Town under the First and Fourth Amendments may go forward, but that summary judgment is appropriate with regard to plaintiff's claims against Bastian under both the First and

---

[6]The court also finds plaintiff's arguments in this regard to be lacking in merit.  Plaintiff notes that a previous version of the disorderly conduct statute was declared unconstitutional by the Supreme Court of New Hampshire.  The court's rationale was that the statute prohibited the knowing refusal to comply with a lawful order of a peace officer without providing a definition of "lawful order."  See State v. Nickerson, 120 N.H. 821, 823-25, 424 A.2d 190, 192-94 (1981); RSA 644:2 (1974).  However, the current disorderly conduct statute, as amended, provides a definition of "lawful order," and thus has been apparently corrected to conform to this criticism.  See RSA 644:2, IV(a) (1986).

23

Fourth Amendments.  In light of the above legal authority, the court construes plaintiff's conspiracy claim as an attempt to extend Rodeschin's and the Town's liability to Bastian.

On the present record, there is insufficient evidence to find an agreement on the part of defendants to deprive Spaulding of constitutionally protected rights.  While the evidence arguably supports that Rodeschin himself acted for an improper purpose, there is insufficient factual predicate to conclude he entered into an agreement with Bastian, or for that matter any other town official, to deprive Spaulding of rights protected by the First or Fourth Amendments.

Plaintiff makes much of evidence that Newport's town manager, Daniel O'Neill, advised Bastian prior to the August 19 meeting that Spaulding was "disrupting" selectmen's meetings as well as that Bastian consulted an attorney who informed him he had "a right and a duty to remove from the meeting any person who was keeping the Board from deliberating by refusing to come to order."  See Affidavit of Arthur Bastian ¶ 1 (attached as Exhibit E to Defendants' Motion for Summary Judgment).  Plaintiff's evidence does not suffice to show that Bastian agreed to deprive Spaulding of constitutionally protected rights--or that a conspiracy was afoot.

Accordingly, the court grants defendants' motion for summary judgment on plaintiff's conspiracy claims.

24

## 6. Plaintiff's State Law Claims

Defendants also seek summary judgment as to plaintiff's state law negligence claims, asserting that they acted reasonably in all respects. For the reasons already discussed, the uncontradicted evidence demonstrates that Bastian acted reasonably under the circumstances. However, the evidence suggests that Rodeschin and the Town may have acted unreasonably in causing plaintiff harm. Accordingly, the court grants Bastian's motion for summary judgment on plaintiff's claim for negligence (Count VII), but denies the motion of Rodeschin and the Town.

## Conclusion

For the foregoing reasons, the court grants the motion for summary judgment (document 18) as to all claims asserted against defendant Bastian. In all other respects, the defendants' motion is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 31, 1996

cc: Andrew L. Isaac, Esq.
    Michael Lenehan, Esq.